[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This case involves a dispute between neighbors on Webb Avenue in Stamford. The plaintiffs, Frank D'Agostino and Teresa D'Agostino, reside at 105 Webb Avenue, and they brought a two count complaint against the defendants, Antoinette Piasecki and her son, Stanley Piasecki, of 101 Webb Avenue. Mrs. Piasecki, the record title owner of 101 Webb Avenue, died during the pendency of this suit, and the action was subsequently withdrawn as to her estate. Hence, Stanley Piasecki, who also occupied the subject premises with his mother, is referred to as the defendant. In the first count of their amended complaint dated April 24, 1995, the plaintiffs allege that in September, 1992, the defendant entered upon their adjacent property and excavated an area of approximately CT Page 1593 60 square feet of the plaintiffs' property. They further allege that because their property is higher than the defendant's property, a "steep cliff" was created, which caused further erosion. The plaintiffs also allege that this action on the part of the defendant constituted a trespass and a nuisance. In the second count, the plaintiffs allege that these activities intentionally caused the plaintiffs to suffer emotional distress. The plaintiffs sought injunctive relief against further trespass or nuisance and damages.
The defendant denied the material allegations of the complaint, except he did agree that he excavated the northern portion of the plaintiffs' property with a back hoe. The defendant, also filed a counterclaim containing five counts. In the first count of the counterclaim, the defendant alleges that he occupied the premises at 101 Webb Avenue with his mother when she was alive, that in November, 1992, the plaintiffs commenced to construct a spite fence along the property line, in violation of General Statutes § 52-570, and that this fence would cut off light and air to his home. In the second count, the defendant claims that the plaintiffs tore down a screening hedge that had existed for many years along the property line, which caused erosion of the defendant's property. In the third count, the defendant alleges a number of annoyances perpetrated on him by the plaintiffs, including soot from their fireplace, constructing an addition to their home without a building permit, and operating a day care center without a license. In the fifth count (since there is no fourth count), the defendant claims other annoyances including that the plaintiffs would start up their car at an early hour, that they repaired cars on weekends, that they set off a car alarm near the defendant's house, threw food on his property, threatened to kill him, operated a noisy chain saw right outside his windows, trained a spotlight on his house, and that Frank D'Agostino had physically assaulted both himself and his deceased mother. The defendant; sought an injunction against the plaintiffs restraining them from threatening or annoying him, and also prohibiting them from constructing a fence along the property line.
The case was referred to Attorney Barbara A. LaVoy, an attorney trial referee, in accordance with General Statutes §52-434(a)(4) and Practice Book § 428 et seq. The attorney trial referee conducted a three-day trial and then filed a report containing the following findings of fact: (1) that the defendant acted as his mother's agent throughout the time periods involved in this case; (2) that the defendant caused an excavation along the CT Page 1594 property line with the plaintiffs, which resulted in the loss of lateral support to, and erosion of the plaintiffs' property; (2) that this encroachment on the plaintiffs' property amounted to 60 square feet; (3) that the plaintiffs expended $1,762.93 to hire a surveyor to measure the extent of this encroachment; (4) that the plaintiffs decided to erect a fence along the property line in order to prevent further erosion; and (5) that the defendant was physically assaulted in November, 1992, by members of the D'Agostino family.
The attorney trial referee reached the following conclusions as a result of her findings of fact: (1) that the defendant had caused a continuous erosion of the plaintiffs' property by reason of the excavation that he had ordered; (2) that as a result of this excavation, the defendant had interfered with the lateral support for the plaintiffs' property; (3) that because the defendant continued to cause an erosion to the plaintiffs' property, he had committed in that he interfered with the use and enjoyment of their property; (4) that the defendant had trespassed on the plaintiffs' property because of the excavation encroaching on their property; (5) that neither of the plaintiffs had proved that they suffered any emotional distress from the defendant's activities; (6) that the defendant had failed to prove the allegations in his counterclaim that the fence constructed by the plaintiffs was for malicious reasons, or was built for spite, and that the other alleged annoyances had not been proven; (7) that the defendant had proved that he had been assaulted by members of the plaintiffs' family and had sustained damage to his camera as well as emotional distress; and (8) that injunctions should issue enjoining each party from harassing the other; that the defendant should be ordered to restore the lateral support of the plaintiffs' property; that $1,762.93 should be awarded to the plaintiffs for their expenditure for a surveyor; and that the defendant should be awarded $145 for damage to his camera, and $325 for emotional distress, resulting from the physical assault committed on him by the plaintiffs and their family.
The plaintiffs did not file any motions with respect to the attorney trial referee's report, but the defendant moved, pursuant to Practice Book § 438, to correct the report. The defendant contends that the findings of fact should be amended to reflect that: (1) Mr. Piasecki was not his mother's agent and her estate was a necessary party to the suit; (2) the plaintiffs maliciously cut down the hedge along the property line, which was the cause for the erosion on their property; (3) the plaintiffs were free at all CT Page 1595 times to prevent and/or correct any such erosion; and (4) the defendant had been assaulted and harassed by the plaintiffs and was entitled to $30,000 damages.
In response to the defendant's motion to correct, the referee declined to make any changes in her findings of fact or recommendation that judgment enter for the plaintiffs and for the defendant in the amounts indicated.
With respect to this court's standard of review of an attorney trial referee's findings of fact in a given case, the Supreme Court has stated that: (1) the trial court may not "retry the case"; and (2) a court may not find additional facts or reject facts found by the referee unless, in the words of Practice Book § 439, "a material fact has been found without evidence or the [referee] has failed to find an admitted or undisputed fact, or has found a fact in such doubtful language that its real meaning does not appear." Dills v.Town of Enfield, 210 Conn. 705, 714, 557 A.2d 517 (1989). Furthermore, a trial court may not engage in "fact-finding contrary to the report of the referee." Id., 716. Thus, generally this court's task consists of, first, determining whether "there was . . . evidence to support the attorney trial referee's factual findings," and, second, whether "the conclusions reached were in accordance with the applicable law." Thermoglaze, Inc. v.Morningside Gardens, Co., 23 Conn. App. 741, 746, 583 A.2d 1331, cert. denied, 217 Conn. 811, 587 A.2d 153 (1991).
In the present case, the defendant filed exceptions to the report, contending that the referee erred in not making the corrections set forth in his motion to correct. However, the file does not indicate that the defendant included a transcript with his exceptions. Practice Book § 439. It follows therefore that the factual findings by the referee must stand uncorrected because, without a transcript, these findings cannot be evaluated to determine whether they find support in the transcript. Hence, the referee's report must be viewed as if no exceptions had been filed. A failure to file valid exceptions constitutes in effect a waiver of the right to "attack the subordinate factual findings contained in the report." See Bernard v. Gershman, 18 Conn. App. 652, 655,559 A.2d 1171 (1989) (holding that a failure to file a motion to correct waived the right to challenge the referee's subordinate factual findings).
The defendant did file the following objections to the acceptance of the referee's report pursuant to Practice Book § 440: CT Page 1596 (1) that there was insufficient evidence presented to justify the referee's conclusions in general, and specifically with respect to the defendant being his mother's agent, which in turned caused a failure by the plaintiffs to join a necessary party, ie., his deceased mother; (2) that the plaintiffs deliberately and maliciously cut down the hedge and caused any resulting erosion to their property; (3) that the plaintiffs could have prevented and cured any erosion to their property; and (4) that the defendant had been harassed by the plaintiffs and was entitled to $30,000.
Since these objections essentially repeat the claims in the motion to correct and in the exceptions filed by the defendant, and since the trial court must accept the referee's findings of fact in the absence of valid exceptions to the report, its task is limited to determining whether the legal conclusions "are legally and logically correct and whether they find support in the facts found by the referee." Bernard v. Gershman, supra, 18 Conn. App. 656; Practice Book § 440.
The defendant first objects that there was not sufficient evidence to justify the finding that the defendant was his mother's agent, and therefore his mother's estate was a necessary party and should have been joined. Because there is no transcript, the court cannot review the referee's finding that the defendant was his mother's agent. Bernard v. Gershman, supra, 18 Conn. App. 655. As an agent, the defendant acted for his mother, and is liable for any actions he took at her behest. See 2 Restatement (Second), Agency § 343, p. 105 (1958). "[A] party is `necessary' if its presence is absolutely required in order to assure a fair and equitable trial."Biro v. Hill, 214 Conn. 1, 5, 570 A.2d 182 (1990). Necessary parties are "persons having an interest in the controversy, and who ought to be made parties, in order that the court may act on that rule which requires it to decide on, and finally determine the entire controversy, and do complete justice by adjusting all the rights involved in it. But if their interests are separable from those of the parties before the court, so that the court can proceed to a decree and do complete and final justice, without affecting other persons not before the court, the latter are not indispensable parties." Id. In addition, the referee noted that there was no objection to the motion by the plaintiffs to amend their complaint to drop the late Mrs. Piasecki as a party defendant.
The referee's conclusions that the defendant's excavation of a portion of the plaintiffs' property was a trespass,[1] and caused CT Page 1597 the property to be deprived of lateral support, and hence that the plaintiffs were entitled to a restitution thereof, and monetary damages, follow logically from the referee's findings of fact.[2]
Thus, the court agrees with her recommendation that judgment should enter in favor of the plaintiff for $1,762.93, and for the defendant in the amount of $470. No material error in the referee's report has been found, nor any other sufficient reason why the report is unacceptable. Practice Book § 443. The court finds that, in the words of Practice Book § 440, the referee's recommendations were "properly reached on the basis of the subordinate facts found."
Accordingly, judgment is entered in favor of the plaintiffs and for the defendant in the amounts recommended by the attorney trial referee, which result in a net award to the plaintiffs of $1,292.93. In addition, the parties are permanently enjoined from harassing, annoying, threatening or interfering with each other.
No costs are to be taxed.
So Ordered.
Dated at Stamford, Connecticut, this 11 day of March, 1996.
William B. Lewis, Judge